IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

CATHERINE RAMIREZ,

      Plaintiff,

v.

HOTEL EQUITIES GROUP, LLC; JACKSON CREEK HOTEL HOLDINGS, LLLP;

      Defendants.

---

## COMPLAINT AND JURY DEMAND

Plaintiff, Catherine Ramirez, by and through undersigned counsel, Stinar Zendejas & Gaithe, PLLC, brings this action against Defendants Hotel Equities Group, LLC and Jackson Creek Hotel Holdings, LLLP as follows:

### I. INTRODUCTION

1.     Plaintiff is a former employee for Defendants Hotel Equities Group, LLC (herein "Hotel Equities") and Jackson Creek Hotel Holdings, LLLP (herein ("Jackson Creek")) (collectively herein referred to as "Defendants").

2.     Plaintiff, after successfully working for Defendants for almost 2 years, was terminated 10 days after she disclosed her need for time off work relating to her medical treatment for a pre-cancerous condition.

3.     This action is brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (hereafter "ADA"), the ADA Amendments Act of 2008, Pub.L. No. 110–325 §

2(b)(1), 122 Stat. 3553–3554 (2008) (hereafter "ADAAA"), as well as the Age Discrimination in

Employment Act of 1967, 29 U.S.C. § 621, *et seq*. (hereafter "ADEA").

4.    Plaintiff also invokes this Court's supplemental jurisdiction to bring claims

against Defendants under the Colorado Anti-Discrimination Act C.R.S. § 24-34-402 (hereafter

"CADA"), which prohibits discrimination on the basis of age, disability or perceived disability

by employers with one or more employees, as well as Colorado state common law and the

Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq*.

## II. JURISDICTION

5.    Jurisdiction is proper in the U.S. district court for the District of Colorado

pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 42 U.S.C. § 12117, and 29 U.S.C. § 2617(a)(2).

Upon information and belief, the district court has original jurisdiction by virtue of the parties

being citizens of different states, and the matter in controversy exceeds the sum or value of

$75,000, exclusive of interests and costs.   Upon information and belief, the district court has

original jurisdiction by virtue of the claims arising under the ADA, ADAAA, and ADEA claims.

Further, the district court has supplemental jurisdiction over Plaintiffs state law claims pursuant

to 28 U.S.C. § 1367.

## III. VENUE

6.    Venue is proper in the district of Colorado pursuant to 28 U.S.C. § 1391(b)(2) as

the actions giving rise to this action occurred in the state of Colorado.

## IV. PARTIES

7.      Plaintiff Catherine Ramirez ("Plaintiff") is an individual residing in El Paso County, Colorado, who at all relevant times was over the age of 40 years old.  As of the date of this Complaint, Plaintiff is 52 years old.

8.      Defendant Hotel Equities Group LLC d/b/a/ Hotel Equities ("Hotel Equities") is a Georgia limited liability corporation that operates a hotel, "Fairfield Inn & Suites, Colorado Springs North" located at 15275 Struthers Road in the City of Colorado Springs in the County of El Paso, Colorado ("Fairfield Inn").  Upon information and belief, and at all relevant times Hotel Equities employed up to 20 employees at the Fairfield Inn.  Upon information and belief, and at all relevant times Hotel Equities employed over 500 employees across the United States at more than 60 locations.

9.      Defendant Jackson Creek Hotel Holdings, LLLP ("Jackson Creek") is a Colorado limited liability limited partnership with its principal place of business located at 560 Congressional Drive, Monument, Colorado.  Jackson Creek owns the Fairfield Inn and Jackson Creek is owned, in whole or in part, by Kevin Englehardt.  Upon information and belief, Mr. Englehardt fully controls all actions of Jackson Creek.

10.      Upon information and belief, at all relevant times, Jackson Creek hired Hotel Equities to manage and operate the Fairfield Inn, including managing its employees.  However, it is unknown the terms and extent of the agreement between Defendants by which Hotel Equities manages and operates the Fairfield Inn.

11.     Upon information and belief, Defendants were joint employers of Plaintiff and shared or co-determined matters governing the essential terms and conditions of Plaintiff's employment.

12.     Upon information and belief, Defendants directed, controlled, or maintained the right to control and supervise the administrative, managerial, and employment duties of Plaintiff.

13.     Upon information and belief, Jackson Creek held authority, direction, and control over its agent, Hotel Equities, and its workers, such as Plaintiff, in the operation of the Fairfield Inn.  Jackson Creek, in its capacity as principal and master of its agent Hotel Equities, is a joint employer of Plaintiff and is directly and/or vicariously responsible for the acts of Hotel Equities.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.     On December 12, 2018, the Colorado Civil Rights Division  ("CCRD") mailed, and Plaintiff subsequently received, a "Notice of Right to Sue" for CCRD Charge Nos. FE2018759262 (against Hotel Equities) and CE2018959059 (against Jackson Creek) (**Exhibit A** and **Exhibit B**, respectively) which pleaded actual and/or abetting discrimination and/or retaliation on the basis of disability and/or medical condition (actual or perceived), failure to accommodate, and age discrimination.  This Notice entitles Plaintiff to initiate this action within 90 days of receipt of said notice.

15.     Plaintiff has satisfied all private, administrative and judicial prerequisites necessary for this action.

## VI. GENERAL ALLEGATIONS

A. <u>PLAINTIFF BEGINS HER EMPLOYMENT</u>.

16.     On January 6, 2016, Plaintiff began working for Defendants as the general manager of the Fairfield Inn.  Prior to joining Defendants, Plaintiff was employed as a manager for the past 18 years at another hotel and was enticed to leave her prior employment for Defendants' offer of an increased salary and overall compensation, as well as opportunities for growth and a promising career.

17.     Plaintiff began her employment with Defendants earning a salary of $65,000 per year plus quarterly bonus/incentive compensation, as well as health, dental, vision, life, short-term disability, and long-term disability insurance, holiday pay, eligibility to participate in a 401k, and personal time off ("PTO") accruing at 80 hours per year, to increase to 120 hours per year upon reaching a third year of employment.

B. <u>ROLE OF DEFENDANTS IN PLAINTIFF'S EMPLOYMENT.</u>

18.     Throughout Plaintiff's employment with Defendants, Mr. Cote, Hotel Equities' vice president of operations, and Mr. Englehardt, the owner of Jackson Creek, held positions of power, control, and authority over Plaintiff in the workplace.

19.     Throughout Plaintiff's employment with Defendants, Hotel Equities paid Plaintiff's compensation, as well as directed, controlled, and maintained the right to control and supervise the administrative, managerial, and employment duties of Plaintiff.

20.     Throughout Plaintiff's employment with Defendants, Jackson Creek, directed, controlled, and maintained the right to control and supervise the administrative, managerial, and employment duties of Plaintiff.

21.     Throughout Plaintiff's employment with Defendants, Jackson Creek routinely inquired into and had access to the Fairfield Inn's business and financial measurements and set Plaintiff's financial goals by which Plaintiff was measured.

22.     Throughout Plaintiff's employment, Jackson Creek provided meaningful input into whether Plaintiff's entitlement to bonuses and other benefits, analysis of her specific and overall performance, and Jackson Creek had meaningful input into any decision to promote, retain, or terminate Plaintiff.

23.     Throughout Plaintiff's employment with Defendants, Jackson Creek (by and through Mr. Englehardt) would routinely visit the Fairfield Inn (given that Mr. Englehardt lived just miles from the Fairfield Inn), examine the property, provide feedback and input into Plaintiff's performance, and treated Plaintiff as one of its own employees.  For instance, Jackson Creek would weekly inspect the hotel, comment on, and/or direct Plaintiff to take certain specific action regarding the hotel, its upkeep, management, and conditions.

24.     At all relevant times and for all practical purposes, Jackson Creek was Plaintiff's on-site supervisor.

25.     At all relevant times, Plaintiff followed and executed on Jackson Creek's orders, directions, or instructions.

C.  PLAINTIFF'S EMPLOYMENT WITH DEFENDANTS.

26.     Throughout her employment with Defendants, Plaintiff's employment was governed in part by the terms of the Hotel Equities Associate Handbook (**Exhibit C** and referred to as "Handbook").  The Handbook contains section "G. PERFORMANCE MANAGEMENT,"

which articulates a "Progressive Discipline Policy," also referred to as "1. POSITIVE

DISCIPLINE PROCEDURE."

27.     In 2015, prior to Plaintiff's employment, the Fairfield Inn's gross sales were

approximately $1.8 million.

28.     When Plaintiff began her employment Jackson Creek (through Mr. Englehardt),

which set Plaintiff's and Fairfield Inn's financial goals, told Plaintiff that if she achieved gross

sales of $2.1 for 2016, it would pay to send Plaintiff on an all-expenses-paid vacation to Mexico.

29.     Throughout 2016, Plaintiff performed her job duties satisfactorily.

30.     However, in approximately July, 2016, Defendants invoked the "POSITIVE

DISCIPLINE PROCEDURE" and "Progressive Discipline Policy" outlined in the Handbook

against Plaintiff and placed Plaintiff on a 90-day Performance Improvement Plan ("PIP").  The

basis for Plaintiff being placed on this PIP was as a result of Plaintiff turning in her reports

untimely.  Plaintiff corrected this problem and satisfactorily completed her PIP.

31.     At no time after July 2016, although Defendants had invoked the "POSITIVE

DISCIPLINE PROCEDURE" and "Progressive Discipline Policy," did Plaintiff receive another

PIP, documented or written warning, letter, memo, or document (as identified in the Handbook)

subjecting her to any discipline, warning, or other progressive discipline under the terms of the

Handbook.

32.     Throughout 2016 Plaintiff received performance/work-related bonuses related to

her success as the Fairfield Inn's general manager.  Between July and September 2016, Plaintiff

earned $17,500.00 in salary and bonus payments.  Between October and December 2016,

Plaintiff earned $18,249.90 in salary and bonus payments.

33.     At the end of 2016, Plaintiff had increased the Fairfield Inn's gross sales from $1.8 million to $2.1 million.

34.     However, when Plaintiff asked Jackson Creek for the vacation it promised for her achievement, Jackson Creek instead gave Plaintiff a $500 Southwest Airlines gift card.

35.     In January 2017, Plaintiff received a raise, which increased her salary to approximately $68,000 per year.  Plaintiff also received a bonus for her 2016 performance.

36.     For 2017 the net revenue goal for Plaintiff and Fairfield Inn was set by Jackson Creek at $2.3 million.

37.     In mid-2017, Defendants were looking at the ownership and operation of future hotels in or around downtown Colorado Springs.  Plaintiff expressed her desire to Defendants to manage new hotel properties for Jackson Creek and/or Hotel Equities that would soon be operational in Colorado Springs.  Defendants informed Plaintiff that they would revisit this matter in the future when the hotel(s) became operational.

38.     In August 2017, while tracking towards the original 2017 financial goal, Jackson Creek revised the goal up to $2.363 million in gross sales.

39.     Throughout 2017, Plaintiff received performance/work-related bonuses related to her success as the Fairfield Inn's general manager.  Between January and March, 2017, Plaintiff earned $19,400.41 in salary and bonus payments.  Between April and June, 2017, Plaintiff earned $20,661.56 in salary and bonus payments.  On August 18, 2017, Plaintiff received an after-tax bonus payment of $6,287.38.

40.     On November 21, 2017, following the publishing of the Fairfield Inn's weekly "STAR" metrics for the week ending November 18, Drew Salapka, Hotel Equities' vice

president of sales and revenue generation e-mailed Plaintiff, "Awesome Job!!!"  On that same

date, Rob Cote, Hotel Equities' vice president of operations sent an e-mail to Plaintiff, which

read: "Great results!!!!!" (**Exhibit D**).

     D.  <u>DEFENDANTS' WRONGFUL TERMINATION.</u>

     41.     In mid/late 2017, Plaintiff received a potential cancer diagnosis relating to an

abnormal cervix ("Medical Issue").

     42.     On November 27, 2017, Plaintiff e-mailed Mr. Cote to inform him that she had

been treating for a Medical Issue and would be taking Paid Time Off ("PTO") the next day as a

result of a required biopsy related to this Medical Issue. (**Exhibit E**).

     43.     On November 28, 2017, while Plaintiff was receiving medical treatment and

taking PTO, Mr. Cote sent an e-mail to Plaintiff which read, "Can you book me a room for

Tuesday 12/5 for 3 nights?  I'll be doing a property visit and meeting with Kevin as well.  Also,

can you make sure that temperatures are in the 80's with no snow 😊." (**Exhibit F**).

     44.     On November 29, 2017, Mr. Cote contacted Plaintiff indicating that he wanted to

have a meeting with her to review the "GSS" (Guest Services Scores), "review and implement a

new minutes per occupied room tool," and to have a "P&L review too." (**Exhibit G**).

     45.     On November 20, 28, and 30, 2017, Plaintiff took PTO to receive medical

treatment for the Medical Issue.

     46.     On December 5, 2017, Plaintiff and her staff celebrated Plaintiff's 51st birthday.

Plaintiff's co-workers presented her birthday banners and balloons.  Mr. Cote arrived in the

afternoon and told Plaintiff that they would not be working together that day and would meet

tomorrow.

47.     On December 6, 2017, Mr. Cote came into Plaintiff's office around 9:45 A.M., closed the door, and informed Plaintiff she was terminated.

48.     Plaintiff was shocked, broke down crying and became extremely upset.  When Plaintiff asked why she was being terminated, the *only* reason given to her by Mr. Cote was that it was due to Plaintiff having failed to input her budget report on the m3 software.

49.     Plaintiff continued sobbing and was crying so hard she could barely speak.  Mr. Cote left Plaintiff's office, returning about a minute later and proceeded to tell Plaintiff, "you know I love you as a person and if you need help with anything please let me know."  This made Plaintiff even more upset.

50.     At no time before or after her termination did Defendants follow the progressive discipline procedure outlined and required in the Handbook, to discipline, suspend, or otherwise attempt to correct the alleged performance issue claimed.

51.     On December 6, 2017, Plaintiff had been and was being treated for her Medical Issue and associated health issues, as well as awaiting a more complete diagnosis, prognosis, and treatment plan from her physician.

52.     On December 7, 2017, Plaintiff sent an e-mail to Mr. Cote requesting payment of her due and owing wages, indicating that she could wait until December 8, 2017, for payment and specifically inquired about her 59 hours of accrued and vested PTO.

53.     On December 8, 2017, Mr. Cote responded to Plaintiff's e-mail request by sending an e-mail which read, "Everyone in the company was effected with the 40 hour issue at the beginning of the year. This was all Hotel Equities salaried employee's. We do not pay out PTO on terminations or voluntary resignations." (**Exhibit H**).

10

54.     Pursuant to section III.B "PAID TIME OFF" of the Handbook, "there will be no payment made for accrued and/or unused PTO, unless required by state law."

55.     On December 8, 2017, Plaintiff received a partial payment from the Defendants, which was deficient as to her approximately 59 hours of accrued and vested PTO, equating to about $2,000.00.

56.     On or about December 8, 2017, Plaintiff filed for unemployment insurance.

57.     On December 12, 2017, cryosurgery was performed on Plaintiff, relating to her Medical Issue.

58.     On or about December 14, 2017, Plaintiff was contacted by the Colorado Department of Labor and Employment and was informed that her unemployment benefits claim was being challenged by Hotel Equities and thus would not immediately be approved.  Plaintiff was informed that Hotel Equities claimed her termination was due to the following alleged factors: she "bullied" co-workers; she failed to enter information into a software program; and because of her recent absences from work.  These alleged reasons for her termination were false and caused Plaintiff to suffer additional stress, anxiety, nausea, and other detrimental emotional and physical effects to her wellbeing.

59.     On December 20, 2017, Plaintiff learned that despite Hotel Equities' misinformation, the Department granted her unemployment benefits claim.

60.     Upon information and belief, for the year ending in 2017 the Fairfield Inn exceed its revised 2017 budget of $2.363 million and finished the calendar year with $2.4 million in gross sales.

61.     Upon information and belief, around approximately February, 2019, Defendants replaced Plaintiff with a younger female employee who was compensated in an amount of money considerably less than Plaintiff was receiving to manage the Fairfield Inn.

62.     On January 11, 2018, Plaintiff was contacted by the Colorado Department of Labor and Employment and was informed that Hotel Equities was appealing the granting of her unemployment benefits claim, even though the last day to appeal was January 10, 2018.  The fact that Hotel Equities were appealing her receipt of unemployment benefits caused Plaintiff to suffer additional stress, anxiety, nausea and other detrimental emotional and physical effects to her wellbeing.

63.     Around January 24, 2018, Defendants paid Plaintiff her entire accrued and vested PTO.

64.     As a consequence of Defendants' above-mentioned actions, Plaintiff has suffered emotional damages.

65.     As a consequence of Defendants' above-mentioned actions, Plaintiff has suffered economic damage as follows: the delayed payment of owed PTO; back wages and compensation; loss of economic opportunities and professional growth; loss of insurance and benefits either not available on the open market or otherwise prohibitively expensive; and other forms of economic harm.

66.     As a consequence of Defendants' above-mentioned failures, statutory interest has accrued on the sums of money due to Plaintiff but not paid by the Defendants, including unpaid PTO and back wages and compensation.

67.     As a consequence of Defendants' above-mentioned failures, Plaintiff has been forced to retain counsel and pursue litigation, incurring costs and attorney's fees.

## VII. CLAIMS OF RELIEF

### FIRST CLAIM OF RELIEF
### ADA/ADAAA 42 U.S.C. § 12112(b)(5)(A) - Disability Discrimination
### Against Defendants Hotel Equities and Jackson Creek

Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

68.     At all relevant times, Defendants qualified as Plaintiff's employers and Plaintiff qualified as Defendants' employee under the ADA and the ADAAA.

69.     At all relevant times, upon information and belief Defendants employed over 500 employees.

70.     Defendants violated the ADA and the ADAAA when they, *inter alia,* unlawfully terminated Plaintiff's employment and/or failed to accommodate her actual and/or perceived disability by refusing to allow Plaintiff to seek or take leave to treat her actual and/or perceived disability.

71.     At all relevant times, Plaintiff had disabilities, including an enlarged/abnormal cervix (a typical precursor for cancer), which constituted an actual or perceived disability or medical condition that substantially limited her in one or more of her major life activities, including, but not limited to eating, sleeping, thinking and concentrating and working.

72.     At all relevant times, Plaintiff was a qualified individual with a disability as she satisfied the requisite skill, experience, education and other job-related requirements of the

position of general manager at the Fairfield Inn and she could perform the essential functions of her position.

73.    In November 2017, following visits to her physician, Plaintiff reasonably requested PTO so as to attend needed medical appointments.  Plaintiff's disabilities, including her medical treatment, constituted physical or mental impairments that substantially limited her in one or more of her major life activities, including working.

74.    At all relevant times, a record existed of Plaintiff's impairments, namely the need for time off from work which Plaintiff took in order to seek medical treatment.

75.    At all relevant times, Plaintiff was disabled or Defendants perceived or otherwise regarded Plaintiff as being disabled.

76.    Plaintiff took PTO for her medical treatment for her Medical Issue.

77.    On December 6, 2017, Defendants terminated Plaintiff's employment, 10-days after learning that Plaintiff had the Medical Issue and would need to take PTO to for further medical treatment.

78.    Plaintiff provided Defendants with sufficient information that, under the circumstances, they are deemed to have known about Plaintiff's actual and/or perceived disability and her desire for accommodation.

79.    The accommodations Plaintiff requested were reasonable.

80.    The accommodations Plaintiff requested posed no undue hardship to Defendants.

81.    At all relevant times and as alleged above, Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

82.     As a direct and proximate result of Defendants' unlawful termination and/or failure to accommodate Plaintiff's actual and/or perceived disabilities, Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proven at trial.

83.     Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

## SECOND CLAIM FOR RELEIF
### ADEA 29 U.S.C. § 621, *et seq*. – Age Discrimination
### Against Defendants Hotel Equities and Jackson Creek

84.     Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

85.     At all relevant times, Defendants qualified as employers of Plaintiff and Plaintiff qualified as Defendants' employee under the ADEA.

86.     At all relevant times, and as alleged above, Plaintiff was over the age of 40 and at the time of her termination of employment by Defendants was 51 years of age.

87.     At all relevant times, and as alleged above, Plaintiff was performing satisfactorily and constantly received bonuses/commissions by the Defendants for her work-related performance.

88.     The only instance in which Plaintiff received any written or formal criticism of her performance was early in the first year of her employment in a separate matter which was resolved.

89.     As alleged above, Defendants terminated Plaintiff's employment on December 6, 2017.

15

90.    As alleged above, Defendants filled Plaintiff's position of general manager a few months after Plaintiff's termination with a younger, less-qualified, less-experienced, and lower-paid worker.

91.    Defendants violated the ADEA when they unlawfully terminated Plaintiff's employment and replaced her with a younger, less-qualified, less-experienced, and lower paid worker.

92.    At all relevant times and as alleged above, Defendants either acted maliciously and willfully knowing their conduct was prohibited by law and/or Defendants acted in a manner which demonstrated their reckless disregard for whether their actions were prohibited by the law or not.

93.    As the direct and proximate result of Defendants' unlawful actions Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proved at trial.

94.    Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

### THIRD CLAIM FOR RELIEF
### CADA C.R.S. § 24-34-402(1)(a) - Disability Discrimination
### Against Defendants Hotel Equities and Jackson Creek

95.    Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

96.    At all relevant times, Defendants, jointly and/or individually, qualified as employers and Plaintiff qualified as Defendants' employee under the CADA.

97.     Defendants violated the CADA when they, *inter alia,* unlawfully terminated Plaintiff's employment and/or failed to accommodate her actual and/or perceived disability by refusing to allow Plaintiff to seek or take leave to treat her actual and/or perceived disability.

98.     At all relevant times, Plaintiff had disabilities, including an enlarged/abnormal cervix (a typical precursor for cancer), which constituted an actual or perceived disability or medical condition that substantially limited her in one or more of her major life activities, including, but not limited to eating, sleeping, thinking and concentrating and working.

99.     At all relevant times, Plaintiff was a qualified individual with a disability as she satisfied the requisite skill, experience, education and other job-related requirements of the position of general manager at the Fairfield Inn and she could perform the essential functions of her position.

100.    In November 2017, following visits to her physician, Plaintiff reasonably requested PTO so as to attend needed medical appointments.  Plaintiff's disabilities, including her medical treatment, constituted physical or mental impairments that substantially limited her in one or more of her major life activities, including working.

101.    At all relevant times, a record existed of Plaintiff's impairments, namely the need for time off from work which Plaintiff took in order to seek medical treatment.

102.    At all relevant times, Plaintiff was disabled or Defendants perceived or otherwise regarded Plaintiff as being disabled.

103.    Plaintiff took PTO for her medical treatment for her Medical Issue.

104.    On December 6, 2017, Defendants terminated Plaintiff's employment, 10-days after learning that Plaintiff had the Medical Issue and would need to take PTO to for further medical treatment.

105.    Plaintiff provided Defendants with sufficient information that, under the circumstances, they are deemed to have known about Plaintiff's actual and/or perceived disability and her desire for accommodation.

106.    The accommodations Plaintiff requested were reasonable.

107.    The accommodations Plaintiff requested posed no undue hardship to Defendants.

108.    At all relevant times and as alleged above, Defendants acted maliciously and willfully as they knew their conduct was prohibited by the law and/or Defendants showed a reckless disregard for whether their actions were prohibited under the law or not.

109.    As a direct and proximate result of Defendants' unlawful termination and/or failure to accommodate Plaintiff's actual and/or perceived disabilities, Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proven at trial.

110.    Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

## FOURTH CLAIM FOR RELIEF
### CADA C.R.S. § 24-34-402(1)(a) – Age Discrimination
### Against Defendants Hotel Equities and Jackson Creek

111.    Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

112.    At all relevant times, Defendants, jointly and/or individually, qualified as Plaintiff's employers and Plaintiff qualified as Defendants' employee under CADA.

113.    At all relevant times, and as alleged above, Plaintiff was over the age of 40 and at the time of her termination of employment by Defendants was 51 years of age.

114.    At all relevant times, and as alleged above, Plaintiff was performing satisfactorily and constantly received bonuses/commissions by the Defendants for her work-related performance.

115.    The only instance in which Plaintiff received any written or formal criticism of her performance was early in the first year of her employment in a separate matter which was resolved.

116.    As alleged above, Defendants terminated Plaintiff's employment on December 6, 2017.

117.    As alleged above, Defendants filled Plaintiff's position of general manager a few months after Plaintiff's termination with a younger, less-qualified, less-experienced, and lower-paid worker.

118.    Defendants violated the CADA when they unlawfully terminated Plaintiff's employment and replaced her with a younger, less-qualified, less-experienced, and lower paid worker.

119.    At all relevant times and as alleged above, Defendants either acted maliciously and willfully knowing their conduct was prohibited by law and/or Defendants acted in a manner which demonstrated their reckless disregard for whether their actions were prohibited by the law or not.

120.     As the direct and proximate result of Defendants' unlawful actions Plaintiff has

suffered and will continue to suffer emotional distress as well as economic losses in an amount to

be proved at trial.

121.     Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of

this pleading.

**FIFTH CLAIM FOR RELIEF**
**Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.* – Failure to Pay Wages Owed**
**Against Defendants Hotel Equities and Jackson Creek**

122.     Plaintiff incorporates by reference the above paragraphs as if fully restated and

realleged herein.

123.     At the time of her termination on December 6, 2017, Plaintiff had earned and

accumulated approximately 59 hours of PTO.

124.     On December 7, 2017, Plaintiff sent an e-mail to Mr. Cote, requesting the

payment of her due and owing wages and inquired as to the status her accrued and vested PTO.

125.     On December 8, 2017, Mr. Cote responded to Plaintiff's e-mail request by

sending an e-mail which read: "Everyone in the company was effected with the 40 hour issue at

the beginning of the year. This was all Hotel Equities salaried employee's. We do not pay out

PTO on terminations or voluntary resignations."

126.     Pursuant to section III.B "PAID TIME OFF" of the Handbook, "there will be no

payment made for accrued and/or unused PTO, unless required by state law."

127.     On December 8, 2017, Plaintiff received a partial payment from the Defendants

which was deficient as to all of her due and owing wages.  Specifically, Plaintiff was not paid for

approximately 59 hours of accrued and vested PTO, equating to approximately $2,000.00.

128.    On or about January 24, 2018, Defendants paid Plaintiff her accrued and vested

PTO.

129.    Defendants' refusal to timely pay Plaintiff her owed wages was knowing, willful,

and wanton.

130.    Defendants' failure to timely pay Plaintiff her vested and determinable wages is in

violation of the Colorado Wage Claim Act, C.R.S. § 8-4-101, et seq.

131.    Because of Defendants' untimely responded to Plaintiff's wage demand

(Defendants had 14 days to respond to Ms. Ramirez's December 7, 2017 wage demand),

Plaintiff is entitled to a penalties associated with Defendants' failures to timely pay wages owed

after a wage demand was made, including a penalty of 125% of the amount owed, or up to 10

days of Plaintiff's average daily earnings, whichever is greater, pursuant to C.R.S. § 8-4-109.  In

addition, fines of up to $50 dollars per day commencing from the date that such wages first

became due and payable may be assessed, pursuant to C.R.S. § 8-4-113.

132.    Defendants' failure to pay Plaintiff her vested and owing PTO was willful, and

therefore she is entitled to penalties pursuant to C.R.S. § 8-4-109.

133.    Plaintiff is entitled to an award of attorney fees pursuant to the CWCA, C.R.S. §

8-4-110.

134.    Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of

this pleading.

### SIXTH CLAIM FOR RELIEF
**Breach of Contract**
**Against Defendants Hotel Equities and Jackson Creek**

135.     Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

136.     Plaintiff and Defendants entered into a valid and enforceable contract regarding her employment, the terms of which were contained in the Handbook.

137.     Pursuant to the Handbook's "Progressive Discipline" terms, contained in its "Positive Discipline Procedure," Plaintiff would only be discharged if she was the subject of "TWO (2) documented verbal/written warnings and a THIRD (3rd) incident or situation occurs within a twelve (12)-month period which either violates policy or rules or indicates inappropriate behavior or poor judgement."

138.     At all times, Plaintiff relied on the terms of the Handbook.

139.     At all times, Defendants' promulgation of the Progressive Discipline policy and termination procedures was an offer, Plaintiff's initial or continued employment constituted acceptance of that offer, and Defendants' payment of compensation to Plaintiff constituted consideration.

140.     As alleged above, at no time after July 2016, although Defendants had invoked the "POSITIVE DISCIPLINE PROCEDURE" and "Progressive Discipline Policy," did Plaintiff receive another PIP, documented or written warning, letter, memo, or document (as identified in the Handbook) subjecting her to any discipline, warning, or other progressive discipline under the terms of the Handbook.

141.    At all relevant times Plaintiff satisfactorily performed her duties as general

manager as reflected by Defendants' paying the Plaintiff quarterly bonuses and a yearly raise in

pay.

142.    Despite the terms, process, and procedure afforded Plaintiff and outlined in the

"Progressive Discipline" policy, which had been invoked by Defendants against Plaintiff around

July 2016, Defendants terminated Plaintiff's employment on December 6, 2017.

143.    In terminating Plaintiff's employment, or otherwise ratifying Mr. Cote's

termination of Plaintiff's employment, Defendants breached the contract, the Handbook, by not

abiding by *inter alia* the terms of the Handbook's Progressive Discipline policy.

144.    As the direct and proximate result of Defendants' breach of contract Plaintiff has

suffered and will continue to suffer emotional distress as well as economic losses in an amount to

be proved at trial.

145.    Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of

this pleading.

### SEVENTH CLAIM FOR RELIEF
### Promissory Estoppel
### Against Defendants Hotel Equities and Jackson Creek

146.    Plaintiff incorporates by reference the above-mentioned paragraphs as if fully

restated and realleged herein.

147.    In the alternative to a finding of the existence of contract between the parties,

Plaintiff hereby pleads promissory estoppel.

148.   At all times, Defendants, by and through the Handbook, promised and assured Plaintiff that Defendants would abide by numerous work-related policies and actions in their relationship with Plaintiff, as their employee.

149.   For instance, Pursuant to the Handbook's "Progressive Discipline" terms, contained in its "Positive Discipline Procedure," Plaintiff would only be discharged if she was the subject of "TWO (2) documented verbal/written warnings and a THIRD (3rd) incident or situation occurs within a twelve (12)-month period which either violates policy or rules or indicates inappropriate behavior or poor judgement."

150.   At all times, Defendants should reasonably have expected the promises contained in the Handbook, especially those contained in the Handbook's "Progressive Discipline," would induce Plaintiff's action or forbearance by said promises.

151.   At all times, Plaintiff reasonably relied on the terms of the Handbook, and especially the "Progressive Discipline" policy to her detriment.

152.   As alleged above, at no time after July 2016, although Defendants had invoked the "POSITIVE DISCIPLINE PROCEDURE" and "Progressive Discipline Policy," did Plaintiff receive another PIP, documented or written warning, letter, memo, or document (as identified in the Handbook) subjecting her to any discipline, warning, or other progressive discipline under the terms of the Handbook.

153.   At all relevant times Plaintiff satisfactorily performed her duties as general manager as reflected by Defendants' paying the Plaintiff quarterly bonuses and a yearly raise in pay.

154.     Despite the terms, process, and procedure afforded Plaintiff and outlined in the "Progressive Discipline" policy, which had been invoked by Defendants against Plaintiff around July 2016, Defendants terminated Plaintiff's employment on December 6, 2017.

155.     It was reasonable for Plaintiff to rely on said promises and expect Defendants to have utilized the Handbook's "Progressive Discipline" prior to their termination, or ratification of her termination, of Plaintiff.

156.     The promises contained in the Handbook, especially those regarding the "Progressive Discipline" and termination, as applied to Plaintiff must be enforced to prevent injustice.

157.     As the direct and proximate result of Defendants' wrongful actions Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proved at trial.

158.     Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

### EIGHTH CLAIM FOR RELIEF
### Wrongful Termination/Discharge
### Against Defendants Hotel Equities and Jackson Creek

159.     Plaintiff incorporates by reference the above-mentioned paragraphs as if fully restated and realleged herein.

160.     Plaintiff and Defendants entered into a valid and enforceable contract regarding Plaintiff's employment, the terms of which were contained in the Handbook.

161.    Alternatively, at all times, Defendants, by and through the Handbook, promised and assured Plaintiff that Defendants would abide by numerous work-related policies and actions in their relationship with Plaintiff, as their employee.

162.    Pursuant to the Handbook's "Progressive Discipline" terms, contained in its "Positive Discipline Procedure," Plaintiff would only be discharged if she was the subject of "TWO (2) documented verbal/written warnings and a THIRD (3rd) incident or situation occurs within a twelve (12)-month period which either violates policy or rules or indicates inappropriate behavior or poor judgement."

163.    At all times, Defendants' promulgation of the Progressive Discipline policy and termination procedures was an offer, Plaintiff's initial or continued employment constituted acceptance of that offer, and Defendants' payment of compensation to Plaintiff constituted consideration.

164.    Alternatively, at all times, Defendants should reasonably have expected the promises contained in the Handbook, especially those contained in the Handbook's "Progressive Discipline," would induce Plaintiff's action or forbearance by said promises.

165.    Alternatively, at all times, Plaintiff reasonably relied on the terms of the Handbook, and especially the "Progressive Discipline" policy to her detriment.

166.    As alleged above, other than a July 2016 PIP, which Plaintiff satisfied, at no time thereafter did Plaintiff receive from Defendants another PIP, written warning, letter, memo, or document (as identified in the Handbook) which subjected her to any discipline, warning, or progressive discipline under the terms of the Handbook.

167.    At all relevant times Plaintiff satisfactorily performed her duties as general manager as reflected by Defendants' paying the Plaintiff quarterly bonuses and a yearly raise in pay.

168.    Despite the terms, process, and procedure afforded Plaintiff and outlined in the "Progressive Discipline" policy, which had been invoked by Defendants against Plaintiff around July 2016, but at no time after, Defendants terminated Plaintiff's employment on December 6, 2017.

169.    In terminating Plaintiff's employment, or otherwise ratifying Mr. Cote's termination of Plaintiff's employment, Defendants breached the contract, the Handbook, by not abiding by *inter alia* the terms of the Handbook's Progressive Discipline policy.

170.    Alternatively, it was reasonable for Plaintiff to rely on said promises and expect Defendants to have utilized the Handbook's "Progressive Discipline" prior to their termination, or ratification of her termination, of Plaintiff.

171.    Alternatively, the promises contained in the Handbook, especially those regarding the "Progressive Discipline" and termination, as applied to Plaintiff must be enforced to prevent injustice.

172.    As the direct and proximate result of Defendants' wrongful discharge, Plaintiff has suffered and will continue to suffer emotional distress as well as economic losses in an amount to be proved at trial.

173.    Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of this pleading.

174.     For instance, Pursuant to the Handbook's "Progressive Discipline" terms, contained in its "Positive Discipline Procedure," Plaintiff would only be discharged if she was the subject of "TWO (2) documented verbal/written warnings and a THIRD (3rd) incident or situation occurs within a twelve (12)-month period which either violates policy or rules or indicates inappropriate behavior or poor judgement."

175.     At all times, Defendants should reasonably have expected that the promises contained in the Handbook, especially those contained in the Handbook's "Progressive Discipline," would induce Plaintiff's action or forbearance by said promises.

176.     At all times, Plaintiff reasonably relied on the terms of the Handbook, and especially the "Progressive Discipline" policy to her detriment.

177.     As alleged above, other than a July 2016 PIP, which Plaintiff satisfied, at no time thereafter did Plaintiff receive from Defendants another PIP, written warning, letter, memo, or document (as identified in the Handbook) which subjected her to any discipline, warning, or progressive discipline under the terms of the Handbook.

178.     At all relevant times Plaintiff satisfactorily performed her duties as general manager as reflected by Defendants' paying the Plaintiff quarterly bonuses and a yearly raise in pay.

179.     Despite the terms, process, and procedure afforded Plaintiff and outlined in the "Progressive Discipline" policy, which had been invoked by Defendants against Plaintiff around July 2016, Defendants terminated Plaintiff's employment on December 6, 2017.

180.    It was reasonable for Plaintiff to rely on said promises and expect Defendants to

have utilized the Handbook's "Progressive Discipline" prior to their termination, or ratification

of her termination, of Plaintiff.

181.    The promises contained in the Handbook, especially those regarding the

"Progressive Discipline" and termination, as applied to Plaintiff must be enforced to prevent

injustice.

182.    As the direct and proximate result of Defendants' actions Plaintiff has suffered

and will continue to suffer emotional distress as well as economic losses in an amount to be

proved at trial.

183.    Wherefore, Plaintiff respectfully requests relief as presented at the conclusion of

this pleading.

WHEREFORE, Plaintiff prays for the following relief:

   A.    Orders and judgments as requested;
   B.    Nominal damages;
   C.    Economic and compensatory damages, in an amount to be shown at trial;
   D.    Consequential damages;
   E.    Liquidated damages;
   F.    Punitive or exemplary damages, in an amount to be shown at trial;
   G.    Statutory penalties for failure to pay wages;
   H.    Statutory penalties for a willful failure to pay wages;
   I.    Costs and attorney's fees;
   J.    Pre- and post-judgment interest at the highest rate allowed by law;
   K.    All legal or equitable relief; and
   L.    All other legal or equitable relief to which Plaintiff is entitled and/or the court and/or
         jury deems just and proper.

**<u>PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES TRIABLE TO A JURY.</u>**

**<u>PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES TRIABLE TO A JURY.</u>**

Respectfully submitted this 1st day of February, 2019.

*s/Christopher G. Wilhelmi*

Christopher G. Wilhelmi
Attorney for Plaintiff
Stinar Zendejas & Gaithe PLLC
121 East Vermijo Ave, Suite 200
Colorado Springs, CO 80903
E-mail: chris@coloradolawgroup.com
Telephone: 719-635-4200
Fax: 719-635-2493

<u>Plaintiff's Address</u>:
Catherine Ramirez
6668 Gambol Quail Drive
Colorado Springs, CO  80918